# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## IINDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **N.N.M.,** *a minor by her mother PAULINE K. MARTIN,* | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 1:14-cv-1700-DKL-RLY** |
| **vs.** | ) | |
| | ) | |
| **CAROLYN W. COLVIN,** *Acting Commissioner of Social Security,* | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

### *Entry on Judicial Review*

N.N.M, a minor by her mother, brings this action for judicial review of the Social Security Administration's decision denying her application for Supplemental Security Income child benefits under the Social Security Act (the "Act"). *See* 42 U.S.C. § 405(g). The parties have consented to the Magistrate Judge's jurisdiction to decide this case.

### *Background*

An application for supplemental security income was filed on behalf of N.N.M., a child under the age of 18, by her mother, Pauline K. Martin, alleging a disability onset date of September 14, 2011. The claim was denied initially and on reconsideration. A hearing was held before Administrative Law Judge ("ALJ") Monica LaPolt in July 2013. N.N.M. and her mother both appeared and testified. In August 2013, the ALJ issued a

decision, finding that N.N.M. has not been disabled since the alleged onset date.  [R. 10-22.]  This action followed.

*Record Evidence*

In September 2011, N.N.M. had a psychological evaluation conducted by clinical psychologist Mark Roth, Ph.D.  [R. 180-84, 187.]  He diagnosed her with ADHD (moderate to severe) and behavioral problems.  [R. 184.]  He noted her recent suspension from school for outbursts and disruption, and that observations of her in the office supported the diagnosis.  [R. 187.]  Roth indicated that she displayed nearly all criteria for ADHD, including poor attention, concentration, and self-control, fighting in school, need for constant supervision, and reduced sleep.  [*Id.*]  He recommended medication to treat ADHD and family counseling.  [*Id.*]  In November 2011, N.N.M.'s pediatrician prescribed Vyvanse 30 mg for her ADHD based on the psychologist's recommendation.  [R. 188.]

Also in November 2011, state agency reviewing psychologist William A. Shipley, Ph.D., completed a Disability Determination and Transmittal Form and Childhood Disability Evaluation Form, concluding that N.N.M.'s impairments were severe but did not meet, medically equal, or functionally equal a listed impairment.  [R. 50, 189-92.]  He determined that she had no limitation in acquiring and using information, moving about and manipulating objects, and health and physical well-being; and a less than marked limitation in attending and completing tasks, interacting and relating with others, and caring for herself.  [R. 191-92.]  In March 2012, state agency reviewing psychologist Donna Unversaw, Ph.D., also completed a Disability Determination and Transmittal Form and

Childhood Disability Evaluation Form, reaching the same conclusions as Shipley.  [R. 51, 206-11.]

N.N.M. was referred by her mother to Gallahue Mental Health Center's school-based program in February 2012 and evaluated by Andrew Degyansky, M.A.  [R. 200.] N.N.M. and her mother reported that N.N.M.'s primary problems were impulse control and behavior problems.  [*Id.*]  She had a short attention span, inability to sit still, and trouble concentrating.  [*Id.*]  The symptoms and problems were noticed at least one year before, and reports of symptoms were increasing in the classroom, per teacher reports. [*Id.*]  N.N.M. was diagnosed with conduct disorder, moderate and ADHD hyperactive impulsive type, and was assigned a GAF of 48, representing serious symptoms or serious impairment.  [R. 203.]  Thereafter, N.N.M. saw Mr. Degyansky for individual and group therapy.

On March 21, 2012, Bethany Fox, N.N.M.'s kindergarten teacher, completed a teacher questionnaire.  [R. 149-56.]  She opined that N.N.M. had "obvious" problems functioning in 6 of 9 activities under the Acquiring and Using Information functional domain, a "slight problem" in one activity, and "no problem" in the remaining 3 activities.  [R. 150.]  She wrote that N.N.M. struggled with understanding and applying many concepts or skills that the majority of the other students had quickly grasped. N.M.M. received extra support from Fox and an instructional assistant once or twice a week.  [*Id.*]  Fox stated that N.N.M. had "obvious" problems functioning in 5 of the 13 activities in the Attending and Completing Tasks functional domain, a "slight problem" in one activity, and "no problem" in the remaining 6 activities.  [R. 151.]  Fox indicated

that N.N.M. had "a very serious problem" functioning in 3 of the 13 activities under the Interacting and Relating with Others domain: expressing anger appropriately, following rules, and respecting and obeying adults in authority.  [R. 152.]  She had an "obvious" problem in three activities, including playing cooperatively, seeking attention appropriately, and asking permission appropriately, and she had a slight or no problem in 7 other activities.  [*Id.*]  Fox reported that N.N.M. had a behavior chart that she had to use about once a month, "typically when she has not taken her medication."  [*Id.*]  Fox stated that N.N.M. had "a very serious problem" on a monthly basis functioning in 1 of 9 activities under the Caring for Herself functional domain: she could not handle frustration appropriately.  [R. 154.]  She had "obvious problems" in 3 activities and no problem in the remaining 5 activities.  According to Fox, when N.N.M. did not take her medication, she had outbursts that escalated with or without adult assistance to calm her. [R. 154.]  Fox indicated that N.N.M. had no problem Moving About and Manipulating Objects.  [R. 153.]  Finally, according to Fox, "[w]ith medication, [N.N.M.] is a model student."  [R. 155.]

In October 2012, N.N.M.'s first-grade teacher, Sarah Konkey, reported that N.N.M. was "all over the place"; she had not taken her medication that day.  [R. 338.]  The teacher also indicated that N.M.M. has major difficulties paying attention towards the end of the day and that the medication seemed to wear off during the last hour of school.  [*Id.*] Konkey added that the behavior issues "typically happen near the end of the school day, with or without medication, but have also been happening at various times throughout the day."  [R. 286.]  Konkey reiterated her concerns in May 2013.  [R. 288.]

In November 2012, Konkey reported that N.N.M. had a "rough start" that morning because she "was not on medication." [R. 350.] Once the medication was brought to school and taken, Konkey reported that N.N.M. "had no behavior issues." [*Id.*] Konkey noted that the only time N.N.M. has behavior issues was when she was not medicated. [*Id.*]

In December 2012, N.N.M.'s therapist met with N.N.M.'s teacher a few times to discuss her behavior in the classroom. On one occasion, the teacher reported that N.N.M. took her medicine that day and was "having a wonderful day." [R. 360.] She reported no behavior issues that were seen the week before when N.N.M. was not taking medication. On another occasion, the teacher said that N.N.M. had been "much better due to the fact that [she] has been consistently taking her medicine," she was "focused and attentive in class," and the teacher had not had to take disciplinary action against N.N.M. because she had been "a model student." [R. 365.]

In January and February 2013, it was noted that N.N.M. was disruptive in class and needed constant redirection; she had not taken her medication before school. [R. 374, 375.]

In May 2013, N.N.M.'s Konkey completed a functional evaluation. [R. 276.] She found that N.N.M. had no limitation in acquiring and using information, less than marked limitation in attending and completing tasks, an extreme limitation in interacting and relating to others, and marked limitations in the remaining functional domains. [*Id.*] Nonetheless, Konkey wrote that N.N.M. "is a very bright, capable child with a lot of potential." [*Id.*]

N.N.M.'s report card for the third and fourth quarters showed mostly 3's and 4's on a 4-point scale in all categories assessed.  [R. 274.]  Konkey assessed how N.N.M. reflected the characteristics of a successful student, and she was given "met expectations" or "improving" in all characteristics of a successful student for the third and fourth quarters.  [R. 275.]  At the end of the second quarter, the teacher commented that she was "so proud of [N.N.M.'s] improvement in attitude and behavior" and that she has taken more responsibility for her actions.  [*Id.*]  For the third quarter, Konkey noted that N.N.M. "continue[s] to work on social skills and being able to work with others" but that she "continues to make great progress in all areas" and was reading at grade level.  [*Id.*]  At the end of the year, the teacher remarked that N.N.M. "has been a pleasure to have in class this year."  [*Id.*]

*Hearing Testimony*

N.N.M. was 7 years of age at the time of the hearing.  She sometimes got into trouble at school.  She had chores at home, including cleaning her room, putting away her dirty clothes, and cleaning off the dinner table.  N.N.M.'s mother testified that N.N.M.'s chores included cleaning her bedroom and bathroom.  The mother had to tell N.N.M. several times to clean her room and it took 6 hours for her to do so.  N.N.M. was easily distracted and needed supervision to clean her room.

N.N.M. had an older sister and a younger sister.  She fought and argued with the younger sister.  N.N.M. was taking Vyvanse and Intuniv.  She had behavior problems at school.  Her mother testified that even when she was on her medication, towards the end of the day, she had some issues with behavior.  She had the same problems at home.  She

6

would fight, hit, yell and argue.  N.N.M. received mental health treatment at school provided by the Gallahue mental health clinic.  She was being evaluated for placement in special education.  She was forgetful and would lose things such as her homework, shoes, and coat.  She had difficulty focusing her attention and was easily distracted.  She was very impulsive.

*Child Disability Standards*

An individual under the age of 18 (a "child") is disabled if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Social Security Administration uses a three-step sequential evaluation to determine whether a child is disabled.  20 C.F.R. § 416.924.  First, the agency determines whether the child is engaged in substantial gainful activity; if so, the claim is denied.  *Id.* § 416.924(b).  Second, the agency determines whether the child has a medically determinable impairment that is severe; if not, the claim is denied.  *Id.* § 416.924(c).  Third, the agency determines whether the child's impairments meet, medically equal, or functionally equal the severity of a listed impairment.  *Id.* § 416.924(d).  If so, the child will be found disabled; otherwise, the agency will find the child not disabled.  *Id.*

"Functionally equal the listings" means that the impairment "must be of listing-level severity."  *Id.* § 416.926a(a).  A child's functioning is assessed in terms of six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for herself; and

health and physical well-being. *Id.* § 416.926a(b)(1). An impairment is of listing-level severity if the child has "marked" limitations in two of the domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a), (d).

*ALJ's Decision*

The ALJ found that N.N.M. was born in July 2006. She was a preschooler on the date her application was filed and a school-age child at the time of the ALJ's decision. She had not engaged in substantial gainful activity. The ALJ determined that N.N.M. had severe impairments of conduct disorder and attention deficit hyperactivity disorder (ADHD). [R. 13.] Next, the ALJ considered these impairments under Listings 112.08 (personality disorder) and 112.11 (ADHD) and concluded that N.N.M. did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment because she did not satisfy the B criteria. [R. 13.] She found no history of cognitive/communicative function and no evidence of a marked impairment in social functioning, personal functioning, or in the ability to maintain concentration persistence or pace. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ also found that N.N.M. did not have an impairment or combination of impairments that functionally equal a listed impairment. [*Id.*] She determined the degree of limitation that N.N.M. had in the six functional equivalence domains, concluding that N.N.M. had a marked limitation in interacting and relating with others, a less than marked limitation in attending and completing tasks as well as in caring for herself, and no limitation in acquiring and using information, moving about and manipulating objects, and in health and physical well-being. [R. 16-22.] Therefore, ALJ

LaPolt determined that N.N.M. had not been disabled since September 28, 2011, the date her application was filed.  [R. 22.]

*Discussion*

Judicial review of an ALJ's decision is limited.  *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015).  The decision will be upheld if the ALJ applied the correct legal standards and the decision is supported by substantial evidence.  *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Stepp*, 795 F.3d at 718 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).  A court may not reweigh the facts or evidence or make its own credibility determinations.  *Id.*  An ALJ need only "minimally articulate" her reasons for rejecting or accepting evidence, which has been described as a very "lax" standard.  *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).  An ALJ need not mention every piece of evidence, but must build a "logical bridge" from the evidence to his conclusions.  *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

N.N.M. first argues that substantial evidence does not support the ALJ's determination that she was not disabled due to her conduct disorder.  She maintains that she proved that her conduct disorder met, medically equaled, or functionally equaled Listing 112.08.  She also contends that the ALJ's failure to summon a medical advisor to testify as to whether she met or equaled a listed impairment requires reversal.  The burden is on the claimant to show that an impairment meets or equals all of the criteria of a listed impairment.  *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).  N.N.M. has not shown that she met all the criteria of Listing 112.08.

N.N.M. also argues that the ALJ erred in finding that she did not meet Listing 112.08 because her behavior problems only occurred when she was not taking her medication. She asserts that she was never given medication for her conduct disorder, only for ADHD, and her behavior problems were due to her conduct disorder, not ADHD. However, the ALJ did not find that N.N.M.'s behavior problems only occurred when she was not taking her medication. Instead, the ALJ found that N.N.M. "experiences heightened problems in maintaining attention and focus when she does not take medication" [R. 15] and that "[o]verall, the evidence demonstrates that the claimant's behavior considerably improves with medication." [*Id.*] Indeed, the ALJ acknowledged the evidence that N.N.M. "continues to have ongoing issues with adverse behavior related to her conduct disorder, [but] her symptoms generally improve with medication." [*Id.*] These conclusions are supported by the substantial evidence in the record, which the ALJ cited in her decision. [*See* R. 15 (referring to teachers' reports, therapist's report, and treatment records).]

Plaintiff maintains that the ALJ ignored the teacher reports that she displayed problem behaviors whether or not she was taking her medication. The ALJ did not specifically mention all such reports, but she was not required to do so. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008) (stating that an ALJ need not specifically address every piece of evidence). And she did not ignore such reports. Rather, the ALJ considered them along with the other teacher reports that improvement was noted when N.N.M. took her medication. [*See* R. 15-16.] While at times N.N.M.'s teachers noted that she displayed behavioral problems whether or not she was given her medication, at other times, they

(including Konkey) also noted that the problems occurred typically at the end of the day, and they noted improvement in N.N.M.'s behavior with medication.  [R. 286-88, 350.] Whether the medication was prescribed for a Conduct Disorder or ADHD is beside the point; what matters is that N.N.M.'s behavior—and functioning—improved with the medication.  Even assuming that N.N.M.'s problem behaviors were attributable to her Conduct Disorder rather than ADHD, it makes no difference given the substantial evidence that her behavior improved with medication.

N.N.M. complains that the ALJ should not have relied on her report card in considering her behavioral problems.  The report card, she submits, evaluated her learning ability and level of accomplishment, whereas the teacher behavior reports evaluated her in functional domains such as interacting and relating to others, moving about and manipulating objects, caring for herself, and health and well-being.  Yet the report card also evaluated N.N.M.'s behavior, both in the comments section and ratings of N.N.M.'s attainment of the characteristics of a successful student.  [R. 274.]  Thus, the ALJ did not err in relying on N.N.M.'s report card as reflecting on her behavior.

Furthermore, N.N.M. argues that the ALJ's finding that she did not functionally meet Listing 112.08 was contrary to her teacher's May 2013 functional evaluation and the ALJ arbitrarily rejected that evaluation.   The ALJ's finding was contrary to the teacher's evaluation; but the ALJ gave good reasons for according no weight to the teacher's evaluation.  The ALJ first explained that the teacher's opinion was inconsistent with N.N.M.'s report card, which reflected that she attained 3's and 4's in academics and a majority of "met expectations" in social skills, with a few "improving" and only one

"needs improvement" and that she read at grade level.  Second, the ALJ reasoned that the teacher's evaluation indicated an unfamiliarity with social security disability standards and relied on the lack of objective evidence of any physical limitation or health concerns.  Lastly, the ALJ found that the teacher's opinion was unclear and contradicted other record evidence.  All of these were good reasons supported in the record for giving Konkey's opinion no weight.

Contrary to N.N.M.'s claim, the ALJ did not rely on her own layperson's opinion as to functional equivalence, but relied on the record evidence including teacher reports and reports from Gallahue mental health clinic.  Nor did the ALJ ignore any functional findings by a treating physician, as Plaintiff suggests.  N.N.M. does not point to any functional assessment by a treating physician.  The ALJ cannot ignore what isn't there.

Regarding the need for a medical advisor to testify on the question of medical equivalence, an ALJ must consider an expert's opinion on the issue of whether a claimant's impairment meets or equals a listed impairment.  *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004).  A state agency reviewing physician or psychologist's opinion on a disability form satisfies this requirement.  *See, e.g.*, *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (concluding that state agency physician's opinions in disability forms as to whether claimant's condition met a listing constituted substantial evidence supporting the ALJ's finding); *Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989) (holding that substantial evidence supported ALJ's determination that widower did not have an impairments that equaled the severity of a listed impairment where two physicians completed disability forms stating that her condition was not equivalent).  The state

agency reviewing psychologists' opinions provide substantial evidence to support the ALJ's conclusion as to medical equivalence and functional equivalence.

In deciding that N.N.M.'s impairments did not meet, medically equal, or functionally equal a listed impairment, the ALJ did not specifically cite these psychologists' opinions.   However, the record contains no contrary opinion of any physician or psychologist.   Under these circumstances, *Scheck* suggests that the ALJ did not have to articulate her reasons for accepting the state agency psychologists' opinions as to medical equivalency.   *See* 357 F.3d at 700-01 (concluding that it was unnecessary for ALJ to articulate her reasons for accepting the state agency physicians' disability determination where there was no evidence which would support the position that the claimant met or equaled the listing).

Even if the ALJ should have cited the reviewing psychologists' opinions and explained why she accepted them, any error was harmless.   The ALJ did cite substantial evidence to support her conclusion that the record did not reflect a marked impairment in N.N.M.'s ability to maintain attention, concentration, persistence and pace, or in cognitive functioning, social functioning, and personal functioning.   [R. 13.] The evidence included treatment records and reports from Gallahue mental health clinic, teacher reports, N.N.M.'s mother's testimony about her child's improvement in school, and N.N.M.'s most recent report card.   [*See* R. 13-22 (citing *inter alia* R. 150, 151-54, 275-76, 349, 350, and 360).]   This same evidence supports the ALJ's determination that N.N.M.'s impairments did not functionally equal the severity of a listed impairment.

Plaintiff argues that the ALJ could not have reasonably relied on the state agency psychologists' opinions because they predated some of her psychotherapy and other evaluations in 2012 and 2013. However, she fails to explain how these evaluations proved that she met, equaled, or functionally equaled a listed impairment. The Court will not make arguments for her.

The ALJ did not simply assume that N.N.M.'s impairments failed to meet, medically equal, or functionally equal a listed impairment. Instead, the ALJ discussed the evidence in her written decision. [*See* R. 13-22.] Nor did the ALJ base her conclusion as to equivalence on her layperson's opinion. Furthermore, an ALJ is not required to obtain an updated opinion unless she finds that additional medical evidence "may change the State agency medical or psychological consultant's finding" as to medical equivalency. *See, e.g., S.N.B. v. Colvin*, No. 1:14-CV-01371-SEB-DML, 2016 WL 775787, at *5 (S.D. Ind. Feb. 9, 2016). Plaintiff does not explain what evidence in the records she cites may have changed the state agency reviewer's opinions as to medical equivalency, and the Court finds nothing either. (Besides, Konkey's May 2013 evaluation concerns N.N.M.'s functioning.) And, as noted, the ALJ gave good reasons for according no weight to her May 2013 functional evaluation.

Plaintiff makes several broad and undeveloped arguments, for example, that the ALJ's decision "fails to build an accurate and logical bridge" from the evidence to her conclusions and failed to consider evidence contrary to her decision [*Pl.'s Supporting Br.* at 12-14.] Because these arguments were not developed, they have been forfeited. *See, e.g., Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) ("We have held time and again

that perfunctory and undeveloped arguments … are waived.").  In any event, upon reviewing the record evidence and the ALJ's decision, the undersigned finds no support for such arguments.

*Conclusion*

For the foregoing reasons, the undersigned finds that the agency's decision should be affirmed.  Final judgment will be entered accordingly.

ENTERED THIS DATE:  03/28/2016

*Denise K. La Rue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record

15